## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

COLLINS & AIKMAN CORPORATION,
*et al.,*

      Debtors.

_____/

GENERAL ELECTRIC CAPITAL
CORPORATION,

      Appellant,

v.

COLLINS & AIKMAN CORPORATION,
*et al.,*

      Appellee.

_____/

Case No. 06-12586
Hon. Gerald E. Rosen

Bankr. Case No. 05-55927
(Jointly Administered)
Hon. Steven W. Rhodes

## OPINION AND ORDER DISMISSING APPEAL

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on      August 30, 2006     

PRESENT:  Honorable Gerald E. Rosen
                 United States District Judge

Through a notice of appeal filed on June 12, 2006, Appellant General Electric

Capital Corporation ("GECC") challenges the Bankruptcy Court's June 9, 2006 order

denying GECC's motion to compel the payment of rent and taxes under certain lease

agreements entered into between GECC and Debtors/Appellees Collins & Aikman

Corporation *et al.*  In an "answer" filed on June 19, 2006, Debtors argue that this appeal

should be dismissed, on the grounds (i) that the challenged order is not "final" within the meaning of 28 U.S.C. § 158(a)(1), such that GECC is entitled to an appeal as of right, and (ii) that GECC has failed to identify a basis for this Court to permit an interlocutory appeal under 28 U.S.C. § 158(a)(3).[1]  Having reviewed the parties' submissions and the record as a whole, the Court agrees with Debtors that the appeal should be dismissed.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Prior to Debtors' bankruptcy filing on May 17, 2005, Debtors and GECC entered into three "Master Lease Agreements," pursuant to which GECC ostensibly leased certain equipment to Debtors.  A few months after this bankruptcy filing, on October 8, 2005, GECC filed an initial motion to compel Debtors to make the rent and tax payments that were due after July 16, 2005 under the terms of the Master Lease Agreements.[2]  This motion was resolved through a stipulated order entered by the Bankruptcy Court on November 10, 2005, pursuant to which Debtors were directed to comply with their obligations under the three leases "unless and until the Court orders otherwise."

In early 2006, however, Debtors ceased making payments under the Master Lease Agreements.  Instead, Debtors announced that they intended to seek to recharacterize the

---

[1]As GECC points out, Debtors' "answer" is more properly characterized as a motion to dismiss the appeal.  GECC has filed a response in accordance with this premise, and this Court, likewise, will treat Debtors' submission as a motion to dismiss the appeal.

[2]As discussed below, the limitation to payments due after July 16, 2005 reflects a provision of the Bankruptcy Code that mandates the "timely perform[ance] [of] all of the obligations of the debtor . . . under an unexpired lease of personal property," but only after the expiration of an initial 60-day post-filing period.  11 U.S.C. § 365(d)(5).  In this case, this period expired on July 16, 2005, 60 days after Debtors' May 17, 2005 bankruptcy filing.

leases as secured financing arrangements — an effort which, if successful, would avoid the statutory requirement of timely performance of Debtors' obligations under "unexpired *lease[s]* of personal property," 11 U.S.C. § 365(d)(5) (emphasis added).[3]  In response, on April 18, 2006, GECC filed a renewed motion to compel Debtors to make the payments called for under the Master Lease Agreements.  Debtors, for their part, commenced an adversary proceeding on April 19, 2006, seeking a declaration that the Master Lease Agreements were properly characterized as secured financing arrangements.  Debtors also filed objections in opposition to GECC's motion to compel payments under the leases.

The Bankruptcy Court addressed GECC's motion at two hearings.  At the first, held on May 11, 2006, the Bankruptcy Court announced the procedure it would follow in deciding GECC's motion.  Citing the pending adversary proceeding in which the parties would fully litigate the question whether the Master Lease Agreements should be recharacterized as secured financing transactions, the Bankruptcy Court scheduled a expedited hearing at which each side would make a more limited "offer of proof" and "present their case" as to the recharacterization issue.  (5/11/2006 Hearing Tr. at 29.)  At the conclusion of this hearing, the Bankruptcy Court would then "decide which side is more likely to prevail" on the recharacterization issue, with this decision determining the immediate outcome of GECC's motion to compel payments, but "having [no] impact

---

[3]Debtors had foreshadowed this effort in the November 10, 2005 stipulated order, which stated that Debtors were "investigating whether the various . . . leases . . . are disguised financing transactions," and that they "reserve[d] their rights to seek recharacterization or avoidance of the [lease] Transactions and any payments made pursuant to the Transactions."

whatsoever" and "not being binding" upon the Bankruptcy Court's ultimate disposition of this issue at the conclusion of the forthcoming adversary proceeding.  (Id. at 29-30.)

Both sides voiced objections to this procedure.  GECC's counsel observed that "the clock is ticking and . . . a lot of [unpaid] rent . . . is accruing," and expressed concern that GECC might be unable to recover these full amounts if Debtors' bankruptcy cases subsequently were converted to Chapter 7 or the "secured creditors were to foreclose tomorrow."  (Id. at 30.)[4]  GECC's counsel further opined that "there are a lot of facts and a lot of third-party witnesses that are going to weigh in at the trial on . . . the underlying issue of whether these [Master Lease Agreements] are true leases," so that an expedited hearing on a limited record might not provide a full opportunity for GECC to demonstrate its entitlement to timely payment under the leases.  (Id. at 31-32.)  Debtors' counsel, on the other hand, suggested that an expedited hearing on the recharacterization issue was unnecessary, where GECC could "file a motion for adequate protection" in order to safeguard its interests while the adversary proceeding remained pending.  (Id. at 33, 38.)

Despite these objections, the expedited hearing went forward on June 1, 2006.  In advance of this hearing, the parties exchanged and filed affidavits and exhibits supporting their respective views on the issue of recharacterization.[5]  After hearing thirty minutes of

---

[4]When pressed by the Bankruptcy Court, however, GECC's counsel was unable to identify any specific grounds for these concerns.  (See id. at 30-31.)

[5]GECC also sought to file a 39-page brief explicating its view of the law governing the recharacterization issue.  The Bankruptcy Court granted Debtors' motion to strike this brief, finding that GECC's submission was procedurally improper and that, in any event, the focus of the hearing was on the facts rather than the law, which the Court viewed as not "that complex."

4

argument from each side's counsel, the Bankruptcy Court concluded that it was "more likely than not" that the Master Lease Agreements would be recharacterized as secured financing transactions.  (6/1/2006 Hearing Tr. at 60.)  Accordingly, the Bankruptcy Court denied GECC's motion to compel payments, and an order was entered on June 9, 2006 reflecting this ruling.

GECC now appeals this ruling.  As a threshold matter, however, Debtors argue that this Court should not entertain GECC's appeal, where (i) the Bankruptcy Court's June 9, 2006 order allegedly is not "final"within the meaning of 28 U.S.C. § 158(a)(1), so that GECC is not entitled to an appeal as of right, and (ii) GECC purportedly has failed to establish a basis for the Court to exercise its discretion to hear an interlocutory appeal. Accordingly, the Court turns to these questions.

## II.  ANALYSIS

### A.    The Bankruptcy Court's Ruling Was Not a "Final" Order that GECC May Appeal as of Right.

Under 28 U.S.C. § 158(a)(1), this Court has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by the Bankruptcy Court.  "A 'final' decision generally ends the litigation on its merits and leaves nothing for the court to do but execute the judgment."  Sun Valley Foods Co. v. Detroit Marine Terminals, Inc. (In re Sun Valley Foods Co.), 801 F.2d 186, 189 (6th Cir. 1986) (internal quotation marks and citation omitted).  "The concept of 'finality' in the bankruptcy context," however, "should

---

(6/1/2006 Hearing Tr. at 16-17.)

5

be viewed functionally," with appellate courts enforcing this threshold requirement "in a more pragmatic and less technical way in bankruptcy cases than in other situations." Cottrell v. Schilling (In re Cottrell), 876 F.2d 540, 541-42 (6th Cir. 1989) (internal quotation marks and citations omitted).  Thus, the Sixth Circuit has allowed an immediate appeal from "an order in a bankruptcy case [that] finally disposes of discrete disputes within the larger case."  Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.), 86 F.3d 482, 488 (6th Cir. 1996) (internal quotation marks, alteration, and citation omitted).

In the present appeal, GECC challenges the Bankruptcy Court's order denying its motion to compel payments under the Master Lease Agreements.  As noted above, GECC's motion rested upon the premise that the Master Lease Agreements are true "leases" within the meaning of 11 U.S.C. § 365(d)(5), giving rise to a statutory requirement that Debtors must "timely perform all of the[ir] obligations" under these leases upon the expiration of an initial 60-day post-filing period.[6]  In their objections to this motion and their complaint in the adversary proceeding, however, Debtors asserted that § 365(d)(5) was inapplicable because the Master Lease Agreements were, in fact, disguised financing transactions.  In the challenged ruling that GECC seeks to appeal, the Bankruptcy Court found that it was more likely than not that Debtors would prevail in the

---

[6]The statutory 60-day period is intended to give a debtor a limited amount of "'breathing space' to make orderly decisions regarding assumption or rejection" of its various leases.  In re Eastern Agri-Systems, Inc., 258 B.R. 352, 354 (Bankr. E.D.N.C. 2000).

6

adversary proceeding, and concluded that GECC was not entitled to payments under the Master Lease Agreements pending the outcome of that proceeding.

Under these circumstances, the Court shares Debtors' view that the Bankruptcy Court's ruling is not "final."  GECC's entitlement to payments under § 365(d)(5), after all, turns upon the determination whether the Master Lease Agreements are true "leases" within the meaning of the statute.  The Bankruptcy Court did not purport to definitively settle this question, but merely expressed its tentative view that Debtors "more likely than not" would prevail upon a full airing of the issue in the forthcoming adversary proceeding.  This interim ruling does not "finally dispose[] of [a] discrete dispute[] within the larger case," In re Dow Corning Corp., 86 F.3d at 488, as necessary to support an appeal as of right.  Rather, the Bankruptcy Court merely decided which party, as between GECC and Debtors, should bear the risk of non- or over-payment in the interim period before the applicability of § 365(d)(5) is finally determined at the conclusion of the adversary proceeding.

Nonetheless, GECC insists that the Bankruptcy Court's ruling is "final" in one important sense.  By virtue of this decision, GECC cannot yet secure the "timely perform[ance]" of Debtors' lease obligations as mandated under § 365(d)(5), but instead must await the conclusion of the adversary proceeding to receive, at best, a delayed and retroactive recovery of the amounts that have come due in the interim under the Master Lease Agreements.  Yet, it is not enough that an appealing party identify some particular subissue that has been "finally" decided by the court below.  Rather, as explained, the

7

challenged ruling must finally resolve a ***discrete dispute*** between the parties, and "a

'dispute,' for appealability purposes in the bankruptcy context, means at least an entire

claim on which relief may be granted."  Shimer v. Fugazy (In re Fugazy Express, Inc.),

982 F.2d 769, 775 (2d Cir. 1992); see also Adelman v. Fourth National Bank & Trust Co.,

N.A. (In re Durability, Inc.), 893 F.2d 264, 266 (10th Cir. 1990) (explaining that "the

appropriate 'judicial unit' for application of the[] finality requirement[] in bankruptcy is .

. . the particular adversary proceeding or discrete controversy pursued within the broader

framework cast by the petition").

Thus, a bankruptcy court does not finally resolve a dispute merely by choosing

between "competing contentions with respect to separable issues."  In re Fugazy Express,

982 F.2d at 775.  Similarly, "an order is not final if it is a solitary decision that functions

only as a step toward a final judgment into which it will merge."  United Phosphorus Ltd.

v. Fox (In re Fox), 241 B.R. 224, 229 (B.A.P. 10th Cir. 1999) (internal quotation marks,

alterations, and citations omitted).  Nor is an "expansive interpretation" of the statutory

requirement of finality warranted merely to avoid interim hardship or harm to a party

while it awaits its opportunity to overturn a purportedly erroneous lower court decision.

Cunningham v. Hamilton County, 527 U.S. 198, 209-10, 119 S. Ct. 1915, 1922-23

(1999); see also Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 378, 101 S. Ct.

669, 675 (1981) (emphasizing that "interlocutory orders are not appealable on the mere

ground that they may be erroneous," even where "potential harm . . . might be caused by

requiring that a party await final judgment before it may appeal" such an order (internal

quotation marks and citation omitted)). Consequently, the challenged ruling here cannot be deemed "final" solely on the ground that it has deprived GECC of an immediate judicial declaration of its entitlement to payment under the Master Lease Agreements, and instead has deferred a determination on this point until the conclusion of the pending adversary proceeding.

The interim, contingent nature of the Bankruptcy Court's ruling also serves to distinguish this case from those cited by GECC in support of its claimed right to an immediate appeal. GECC chiefly relies upon Urban Retail Properties v. Loews Cineplex Entertainment Corp., No. 01-8946, 2002 WL 535479 (S.D.N.Y. Apr. 9, 2002), in which the district court permitted an immediate appeal from a bankruptcy court ruling that adopted a "proration approach" to the determination of the amount due under a lease that required the debtor, Loews Cineplex Entertainment, to pay the cost of constructing a movie theater on the leased property. The debtor argued that this ruling was not final because it did not completely foreclose the opportunity to seek recovery of the full $1 million cost of construction in the event that the debtor rejected the lease. The district court disagreed, construing the bankruptcy court's ruling as definitively precluding any possibility of "immediate payment of the $1,000,000 under [11 U.S.C. ] Section 365(d)(3)," and instead conclusively determining that any eventual recovery upon rejection of the lease would be calculated under the "proration approach." Urban Retail Properties, 2002 WL 535479, at *2-*4. The district court viewed this as a "final[] resol[ution]" of the "discrete issue central to this appeal" — namely, whether § 365(d)(3)

9

"requires payment of postpetition obligations in their entirety or whether the obligations should be prorated between prepetition and postpetition periods."  2002 WL 535479, at *3, *6.

The ruling at issue here simply did not finally and conclusively resolve the analogous issue that is "central to this appeal" — namely, whether the Master Lease Agreements are true "leases" that give rise to an obligation of timely performance under § 365(d)(5).  It remains entirely possible that, at the conclusion of the adversary proceeding commenced by Debtors, the Bankruptcy Court will accept GECC's contention that Debtors are obligated to make the payments called for under the Master Lease Agreements pursuant to § 365(d)(5).  Through the challenged order, the Bankruptcy Court merely expressed its tentative, interim view that it was unwilling to compel such payments under the record and arguments presented to date.

Notably, GECC itself recently distinguished Urban Retail Properties on substantially the same ground, in a brief filed with the federal district court in White v. Walsam EMP, LLC (In re Walsam EMP, LLC), No. 05-00080 (S.D.N.Y.).  Specifically, GECC argued that Urban Retail Properties did not support the conclusion that the order on appeal in that case was "final":

> In Urban Retailers, this Court denied a motion to dismiss an appeal of a bankruptcy court order denying a landlord's motion to compel the Debtor to immediately pay rent under § 365(d)(3) of the Bankruptcy Co[de].  In the Urban Retailers case, unlike the instant case, there was no dispute as to the amount of rent owed by the debtor.  Rather, the only issue before the Court in Urban Retailers was the legal issue as to whether the debtor was required to pay all construction charges immediately upon completion of

10

construction, or whether it was only required to pay construction charges that were allocable to post-petition construction.  Unlike the instant case, there were no factual issues as to the amount of rent owed, and the Bankruptcy Court's decision in <u>Urban Retailers</u> was not based upon the fact that the Bankruptcy Court was required to first resolve another pending motion concerning the validity and amount of the lessor's claim before ruling on the lessor's request for relief under §365(d)(3).  Hence, the facts of <u>Urban Retailers</u> are inapposite to this case, and the Court's decision in <u>Urban Retailers</u> does not control.

<u>In re Walsam EMP</u>, No. 05-00080 (S.D.N.Y.), GECC's 2/2/2005 Appellate Br. at 12.

The same can be said here, where factual issues remain to be decided by the Bankruptcy Court concerning Debtors' effort to recharacterize the Master Lease Agreements as secured financing arrangements, and where the Bankruptcy Court must first "resolve another pending [proceeding] concerning the validity and amount of [GECC's] claim before ruling on [GECC's] request for relief" under § 365(d)(5).  Accordingly, the determination of finality in <u>Urban Retail Properties</u> is inapposite here.  Likewise, GECC's reliance on <u>O'Brien v. Ravenswood Apartments, Ltd. (In re Ravenswood Apartments, Ltd.)</u>, 338 B.R. 307 (B.A.P. 6th Cir. 2006), is misplaced, where the bankruptcy court in that case had finally and conclusively determined that a land installment contract entered into by the debtor was not an "executory contract" within the meaning of § 365(a).  The challenged Bankruptcy Court ruling here, in contrast, simply does not purport to conclusively decide, one way or the other, whether GECC is entitled to demand compliance with the Master Lease Agreements as true "leases" within the meaning of § 365(d)(5).  Accordingly, the Court finds that the June 9, 2006 order is not

"final" and appealable under 28 U.S.C. § 158(a)(1).[7]

## B.      GECC Has Not Satisfied the Criteria for Permitting an Interlocutory Appeal.

In the event that this Court rules, as it now has done, that the Bankruptcy Court's order is not "final," GECC invites the Court to exercise its discretion under 28 U.S.C. § 158(a)(3) to entertain an appeal from this interlocutory order.  GECC's arguments in support of this proposition are mutually inconsistent, however, and generally tend to undermine, rather than support, its request for leave to pursue an interlocutory appeal.

In determining whether to grant leave to appeal from the Bankruptcy Court's interlocutory order, the Court considers the following factors:  (i) "whether the order on appeal involves a controlling question of law as to which there is a substantial ground for difference of opinion;" (ii) "whether an immediate appeal may materially advance the ultimate termination of the litigation;" and (iii) "whether denying leave would result in wasted litigation and expense."  In re Eggleston Works Loudspeaker Co., 253 B.R. 519, 521 (B.A.P. 6th Cir. 2000); see also In re PHM Credit Corp., 99 B.R. 762, 767-68 (E.D.

_____

[7]This same reasoning defeats GECC's appeal to the "collateral order doctrine" addressed by the Supreme Court in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S. Ct. 1221 (1949).  This doctrine applies only when an order "(1) conclusively determines the disputed question; (2) resolves an important question completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from final judgment."  In re Dow Corning Corp., 86 F.3d at 488.  As explained, the challenged order in this case does not "conclusively determine[]" GECC's entitlement to a recovery under § 365(d)(5), but instead defers this issue for final adjudication in the pending adversary proceeding.  Moreover, the Court fails to see how the issue of the Master Lease Agreements' characterization as true "leases" could be deemed "completely separate from the merits" of the dispute between GECC and Debtors; to the contrary, this question is at the heart of the parties' dispute.  Finally, as discussed below, GECC has failed to persuade the Court that the applicability of § 365(d)(5) will evade review if the appeal on this issue is deferred until the conclusion of the adversary proceeding.

12

Mich. 1989).  The Court finds that none of these factors supports an interlocutory appeal of the challenged order.

With regard to the first factor, GECC suggests that the Bankruptcy Court's ruling implicates two controlling questions of law:  (i) whether Debtors must timely perform their obligations under the Master Lease Agreements, which, in GECC's view, must be "presumed to be true leases" within the meaning of § 365(d)(5) until proven otherwise; and (ii) whether the procedure employed by the Bankruptcy Court to decide GECC's motion to compel payments denied GECC's right to due process.  (GECC's Response Br. at 15.)  This suggested framing of the issues on appeal, however, is both misleading and internally inconsistent.

First, it is immediately evident, both from GECC's own submissions to this Court and the statements of its counsel at the Bankruptcy Court hearings, that the applicability of § 365(d)(5) to the Master Lease Agreements cannot fairly be considered a pure "question of law" that this Court could appropriately address in an interlocutory appeal. In its brief filed with this Court, for example, GECC states that the question of the proper characterization of the Master Lease Agreements as true "leases" under § 365(d)(5) "is an extremely complex and heavily litigated issue with respect to which there are hundreds of conflicting opinions and numerous scholarly articles."  (GECC's Response Br. at 5.) Presumably, the complexity of this issue and the existence of many "conflicting opinions" are a product, at least in part, of the myriad fact situations presented from one case to the next.  See United Airlines, Inc. v. HSBC Bank USA, N.A., 416 F.3d 609, 614 (7th Cir.

13

2005) ("Whether a 'lease' is a true or bona fide lease or, in the alternative, a financing 'lease' or a lease intended as security, depends upon the circumstances of each case." (internal quotation marks, alteration, and citation omitted)).

But the Court need not speculate on this point, because GECC's counsel advanced precisely this view in the Bankruptcy Court proceedings. As noted earlier, GECC raised two objections to the Bankruptcy Court's proposed procedure for deciding the motion to compel payments. The second of these objections was that "there are a lot of facts and a lot of . . . witnesses" that GECC believed would need to be discovered and deposed before it would be fully and properly prepared to address the issue of recharacterization in the forthcoming adversary proceeding. (5/11/2006 Hearing Tr. at 31.) Accordingly, GECC's counsel expressed the concern that the Bankruptcy Court seemingly proposed to decide this issue under "less than all the evidence" that was relevant to its determination. (Id. at 32.) This amply illustrates the fact-bound, as opposed to purely legal, nature of the inquiry whether the Master Lease Agreements are "leases" under § 365(d)(5).

Indeed, this is precisely the ground for GECC's second complaint before this Court about an error on a "controlling question of law." Specifically, GECC asserts that the procedure employed by the Bankruptcy Court in deciding the motion to compel payments deprived GECC of a full and fair opportunity to pursue all of the discovery and uncover all of the facts bearing upon the proper characterization of the Master Lease Agreements. This argument is explicitly premised, of course, upon the fact-bound nature of the recharacterization issue. The Court readily concludes, then, that the first

14

"controlling question of law" identified by GECC is laden with factual issues, and thus is not a candidate for resolution in an interlocutory appeal.

Neither is GECC's "due process" challenge fairly characterized as purely "legal." Initially, the Court cannot help but observe that GECC seemingly cannot make up its mind whether the amount of due process afforded by the Bankruptcy Court was too much or too little. As discussed at greater length below, if the Court were to accept GECC's due process challenge on the merits, the proper remedy presumably would be to remand the matter to the Bankruptcy Court for a more thorough and comprehensive hearing on GECC's entitlement to payment under § 365(d)(5). Yet, in its discussion of the Bankruptcy Court's purported violation of its due process rights, GECC asserts that even the more limited hearing conducted in the court below "was completely unnecessary," as the Bankruptcy Court simply could have "presume[d]" that the Master Lease Agreements were true leases "until proven otherwise" in the forthcoming adversary proceeding, at which point GECC could disgorge any overpayments it had received under the agreements. (GECC's Response Br. at 17.) In essence, then, GECC argues that the Bankruptcy Court was constrained to adopt one of two opposing, all-or-nothing approaches: either allow a full airing of the recharacterization issue, with each side permitted to introduce any and all evidence and argument bearing upon this question, or grant GECC's motion to compel payments without affording Debtors any opportunity to support their allegation that the Master Lease Agreements are not true leases.

Viewed in this light, it cannot be said that the validity of the procedure employed

15

by the Bankruptcy Court turns upon a "controlling question of law."  To the contrary, the Court views GECC's "due process" challenge as directed at the Bankruptcy Court's considerable discretion in determining how best to manage its docket.  If, on one hand, the Bankruptcy Court had accepted the assertion of GECC's counsel that the recharacterization issue could only be decided after a full course of discovery and trial, it might well have deferred a ruling on GECC's motion to compel payments to coincide with the conclusion of this trial.  This, in fact, was precisely the procedure advocated by Debtors' counsel at the May 11, 2006 hearing before the Bankruptcy Court. (See 5/11/2006 Hearing Tr. at 33-38.)  As noted by Debtors' counsel, GECC could then have filed a motion for adequate protection to safeguard its interests while awaiting a ruling on the applicability of § 365(d)(5).  See 11 U.S.C. § 363(e) (authorizing the bankruptcy courts to entertain requests for "adequate protection").  GECC has not identified any legal principle that would have precluded such a course of action, and instead would mandate an immediate hearing and decision on a motion under § 365(d)(5) to compel compliance with the terms of a lease.

Neither has GECC identified any controlling legal principle that required the Bankruptcy Court to "presume" that the Master Lease Agreements were true leases and order compliance with these agreements under § 365(d)(5), without affording Debtors any opportunity to make a *prima facie* showing, at least, that this statutory provision was not applicable.  The cases cited by GECC establish, at most, that a mere allegation questioning the characterization of an agreement as a true "lease" is not enough, standing

16

alone, to overcome the duty of timely performance under § 365(d)(5).  See In re Mirant

Corp., No. 03-46590, 2004 Bankr. LEXIS 1377, at *12 (Bankr. N.D. Tex. Sept. 15,

2004); In re Elder-Beerman Stores Corp., 201 B.R. 759, 764 (Bankr. S.D. Ohio 1996).[8]

Neither these decisions nor any other of which the Court is aware would preclude a

bankruptcy court from convening a hearing for the limited purpose of making a tentative,

preliminary determination as to the likelihood that a lease will be recharacterized as a

secured financing arrangement.  To the contrary, § 365(d)(5) itself authorizes the

bankruptcy court to relieve a trustee or debtor-in-possession of the duty of timely

performance under a lease, "after notice and a hearing and based on the equities of the

case."  11 U.S.C. § 365(d)(5).  Arguably, the relevant "equities" could encompass the

likelihood that a lease will be recharacterized as a secured financing transaction in a

forthcoming proceeding.[9]

_____

[8]Notably, in the latter of these two decisions, the lessor couched its claim for relief as seeking "adequate protection" pending the outcome of an adversary proceeding in which the court would determine the proper characterization of the purported leases.  See Elder-Beerman Stores, 201 B.R. at 761.  This, of course, is precisely the course of action that Debtors claim GECC should have pursued in this case.

[9]Because § 365(d)(5) does not mandate a particular procedure for resolving motions to compel a debtor to timely perform its obligations under a lease, and because this provision expressly allows for consideration of the "equities" of a particular case, this Court believes that Bankruptcy Judge Rhodes should be commended in this case for fashioning a procedure that afforded both sides a reasonably thorough opportunity to be heard and offer evidence on the issue of GECC's entitlement to relief under § 365(d)(5), and yet still produced a prompt, if only tentative, ruling on this issue.  To the extent that GECC complains that this procedure did not properly incorporate and account for the burdens of production and proof that govern the recharacterization of a lease, this Court is confident that the forthcoming adversary proceeding will be conducted in full accordance with these standards.  Indeed, Debtors' counsel acknowledged at the May 11, 2006 hearing before the Bankruptcy Court that "the entity seeking to recharacterize has the burden of proof."  (5/11/2006 Hearing Tr. at 36.)

17

For much the same reason, GECC has failed to persuade the Court that an interlocutory appeal would materially advance the ultimate termination of the litigation between the parties. Again, GECC strenuously insists, and the Court agrees, that the issue of recharacterization of the Master Lease Agreements is complex and fact-intensive. This Court could hardly be expected, then, to determine in the present appeal whether these agreements are true leases, under a record that GECC acknowledges is inadequate to fully and finally decide this issue. Rather, the Court would invariably be required to remand the matter so that the Bankruptcy Court could develop the record and resolve this issue in the first instance. Yet, the Bankruptcy Court already is scheduled to address this issue in the pending adversary proceeding. This Court is unwilling to entertain an interlocutory appeal for the purpose of exercising control over the Bankruptcy Court's docket and insisting that one issue or one participant in Debtors' complex and lengthy bankruptcy proceedings go to the head of the line.

Even the more limited award of relief suggested by GECC would not materially advance the ultimate disposition of the dispute between the parties. GECC maintains that there is essentially no risk that it would be unable to disgorge any overpayments it might receive as a result of an order compelling Debtors to make timely lease payments under § 365(d)(5) pending the outcome of the adversary proceeding. It claims, in contrast, that Debtors' allegedly precarious financial position poses a real risk that GECC may not be able to retroactively recover the delinquent lease payments that Debtors would owe in the event that their effort to recharacterize the Master Lease Agreements does not succeed.

18

Yet, as noted earlier, and as Debtors' counsel has suggested, it is not necessary for this Court to weigh these relative risks through the vehicle of an interlocutory appeal, where GECC remains free to pursue this matter before the Bankruptcy Court in the form of a request for adequate protection under § 363(e).  Nor would a ruling from this Court on this matter aid in the resolution of the parties' underlying dispute — regardless of which party bears the risk of over- or non-payment in the interim, the core issue of recharacterization would remain to be resolved in the pending adversary proceeding.

Finally, the Court finds no basis to believe that a denial of leave to appeal would result in wasted expense and litigation.  To the contrary, for the reasons explained above, an interlocutory appeal merely would result in litigation in *two* forums rather than one.  Since the present appeal provides no legitimate opportunity to address the central point of contention between the parties — the proper characterization of the Master Lease Agreements — any ruling that this Court might issue could not possibly bring the overall dispute to a speedier or more efficient conclusion.  Consequently, the Court declines to grant leave for GECC to pursue an interlocutory appeal.

## III.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that this appeal be, and hereby is, DISMISSED.

s/Gerald E. Rosen
Gerald E. Rosen

19

United States District Judge

Dated:  August 30, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 30, 2006, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager